## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DARRYL WILLIAMS,**
        Plaintiff,

    v.                                   **Civil Action No. 05-0880**

**JO ANNE BARNHART,**
Commissioner of Social Security,
        Defendant.

### MEMORANDUM OPINION

**November 30, 2005**

    **I.**      **Introduction**

Plaintiff, Darryl Williams, brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) of the Social Security Act ("Act") seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income (SSI) under title XVI of the Act. 42 U.S.C. §§ 1381-1383f. As is customary in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment for this Court's consideration.

After careful consideration of the Administrative Law Judge's ("ALJ's") decision, the briefs submitted by the parties, and the entire record, this Court finds that the ALJ's findings are not supported by substantial evidence in certain respects, and therefore, will deny the Commissioner's motion for summary judgment, grant plaintiff's motion for summary judgment in part, and remand for further proceedings.

## II.    Procedural History

Mr. Williams applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 28, 2003. R. at 48–50. Plaintiff was denied benefits and subsequently requested a hearing, which was held on September 9, 2004.[1] At the hearing, at which Administrative Law Judge ("ALJ") Melvin Rosenberg presided, plaintiff was represented by counsel, and an impartial vocational expert ("VE") also appeared and testified. R. at 333–41. On October 21, 2004, ALJ Rosenberg ruled that plaintiff was not disabled. R. at 14–21. On April 22, 2005, the Appeals Council declined plaintiff's request to review the ALJ's decision. R. at 5–9. This timely appeal followed.

## III.   Statement of the Case

## A.   Factual Background

Plaintiff was born on May, 11, 1960 and was 44 years old at the time of his hearing. R. at 310. He has a high school education and his past relevant work is as a bar attendant, landscaper, deli clerk, and janitor. R. at 311, 334, 335. Plaintiff does not claim that a single incident has left him disabled; rather, a number of ailments — asthma, back pain, high blood pressure, and a bipolar disorder —  have culminated in his alleged disability starting March 11, 2003.

---

[1] Because the Commissioner randomly selected this case to test modifications to the disability determination process, she eliminated the reconsideration step of the administrative review process and escalated this case to the hearing level.

**B.    Medical History**

Between the dates of March 21, 2003 and August 10, 2004, plaintiff was treated some twenty-one times by medical personnel. Plaintiff's pertinent medical history began on March 21, 2003 when he went to the Western Psychiatric Institute and Clinic ("WPIC") to be enrolled in a mood disorder treatment study. R. at 141–47. Plaintiff met with and was evaluated by Clara Gautier, Ph.D., who observed that he was "cooperative and agreeable .... His speech was excited, fairly rapid, somewhat tangential, and sometimes a bit loud ...." R. at 141. Plaintiff reported that he was "sad, [had] low but reactive mood, sporadic difficulty sleeping, decreased appetite, low self-esteem, poor concentration, psychomotor agitation, talkativeness with difficulty keep the volume of his voice down, [and] racing thoughts." R. at 141. He admitted to drinking about five beers a day and occasionally smoking marijuana and using crack cocaine. R. at 141. Dr. Gautier assigned plaintiff a GAF score of 51,[2] and diagnosed him with bipolar disorder, most recent episode depressed, and alcohol and cocaine abuse. R. at 146.

Plaintiff presented for a comprehensive medical examination with Peter Murray, PAC, at East Liberty Healthcare on April 24, 2003. Mr. Murray examined plaintiff and determined that he had hypertension, most likely secondary to cigarette smoking and daily alcohol consumption. R. at 136. Plaintiff was also prescribed an albuterol inhaler to help with his breathing. R. at 133.

---

[2] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by clinicians to indicate an overall judgment of a person's psychological, social, and occupational functioning.  A GAF score between 51 and 60 is summarized as "Moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R)* 34 (4th ed. 2000).

On April 29, 2003, plaintiff returned to WPIC for a follow-up examination with Ihsan Salloum, M.D. R. at 225. At the evaluation, plaintiff admitted to drinking ten to twelve beers per day and also reported using crack cocaine a few times per month. R. at 225. Dr. Salloum described the plaintiff as "cooperative, mildly agitated and [with] hyperactive motor behavior, intense mood, affect broad, denies suicidal or homicidal ideation. Denies psychotic symptoms, speech rapid ..." [sic]. R. at 225. Dr. Salloum diagnosed plaintiff with bipolar disorder, currently manic without psychotic features, alcohol dependent, and cocaine abuse. R. at 225. Dr. Salloum started him on a mood stabilizer and assigned him to a therapist. R. at 225. On May 2, 2003, plaintiff returned to Dr. Salloum and reported a mild improvement because the medications helped him sleep and increased his appetite. R. at 224.

On May 9, 2003, plaintiff had a follow-up appointment regarding his hypertension with Mr. Murray, at which he reported that he was drinking and smoking less. R. at 132. He also reported that he exercised daily, landscaped, and took his medications as prescribed. Plaintiff's physical exam was normal and he continued seeing Mr. Murray throughout 2003, during which time plaintiff's hypertension was brought under control. R. at 259–75.

Plaintiff met with Dr. Salloum on June 10, 2003 and reported an irritable mood and rapid speech. There was no perceptual disturbance, formal thought disorder, or cognitive dysfunction. R. at 223. Dr. Salloum recommended that plaintiff continue taking his medications. R. at 223.

Plaintiff's mental residual functional capacity ("R.F.C.") was assessed by Raymond Dalton, Ph.D., a state agency psychologist, on June 24, 2003. Dr. Dalton

4

determined that plaintiff was moderately limited in his abilities to carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. R. at 148–49. In all other categories of mental work-related activities, however, Dr. Dalton concluded that plaintiff was not significantly limited. R. at 148–49. Dr. Dalton found that plaintiff's basic memory processes were intact, he could make simple decisions, and he could carry out very short and simple instructions. R. at 150. Dr. Dalton also found that plaintiff's activities of daily living and social skills were functional and he could function in production-oriented jobs requiring little independent decision making. R. at 150. Furthermore, Dr. Dalton opined that plaintiff retained the ability to perform repetitive work activities without constant supervision, and placed no restrictions on his understanding and memory. Dr. Dalton concluded that plaintiff was able to meet the mental demands of work despite his history of substance abuse. R. at 150.

On July 15, 2003, plaintiff returned to Dr. Salloum for a follow-up evaluation and complained of lability and irritability. R. at 222. Plaintiff admitted that he stopped taking Zyprexa[3] because of its sedating effect despite his awareness that the drug helped his symptoms. R. at 222. Dr. Salloum prescribed Depakote.

On September 23, 2003, plaintiff went to University of Pittsburgh Medical Center ("UPMC"), McKeesport complaining of depression. R. at 175. Janme Shaktawat, M.D., performed a physical examination, which was normal. Plaintiff was also evaluated by

---

[3] A prescribed medication.

Carlos Placci, M.D., who noted that plaintiff was somewhat histrionic,[4] hypertalkative, but in good control. R. at 178.

Plaintiff returned to Dr. Salloum on September 30, 2003 for another follow-up evaluation. R. at 219. Dr. Salloum described plaintiff as "improved," but recommended that plaintiff should continue with therapy and continue to work on improving coping skills and relapse prevention. R. at 219.

On October 28, 2003, plaintiff returned to Dr. Salloum. R. at 216. Dr. Salloum observed that plaintiff had normal motor behavior and that speech rate and rhythm were normal. Plaintiff complained that his medications were sedating him too much, but that he felt stable. R. at 216. Plaintiff returned to Dr. Salloum on January 27, 2004 and reported that his symptoms remained stable. R. at 213.

On February 19, 2004, plaintiff presented to Mr. Murray's office for a routine follow-up for his asthma and hypertension. R. at 276–78. Mr. Murray assessed that plaintiff suffered from intermittent asthma, which was well-controlled. R. at 277.

On March 12, 2004, at the state agency's request, Robert Lanz, M.D., conducted a consultative psychological examination. R. at 165–68. Dr. Lanz determined that plaintiff was slightly limited in understanding and remembering short, simple instructions, and in carrying out those instructions. Plaintiff was moderately limited in understanding and remembering detailed instructions and carrying out those instructions. He was also moderately limited in making judgments on simple work-related decisions. Dr. Lanz determined that plaintiff was moderately limited in

---

[4] Deliberately affected: theatrical. *Merriam-Webster Online Dictionary.* Available at:
http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=histrionic. Accessed November 28, 2005.

interacting appropriately with the public, supervisors, and co-workers; and moderately limited in responding to work pressures and changes in a work setting. Dr. Lanz also determined that plaintiff's "[d]rinking or drug usage may contribute to depression." R. at 172.

On March 16, 2004, plaintiff presented to UPMC, McKeesport for psychiatric admission, because of an exacerbation of his depression. R. at 179–205. Dr. Placci was the attending physician and described plaintiff as adjusting well to the hospital routine, irritable, having a sense of entitlement, but in good spirits. R. at 187. Plaintiff was discharged on March 22, 2004 with a GAF score of 60.[5] R. at 187–88.

Plaintiff followed-up with Dr. Salloum on April 27, 2004 and reported that his symptoms were stable and that he was working up to twelve hours per day as a landscaper. R. at 211. Plaintiff reported continued use of alcohol. R. at 211. On June 8, 2004, plaintiff reported that he had discontinued Depakote and was not doing as well, though he continued working as a landscaper. R. at 210.

On July 13, 2004, plaintiff returned to Dr. Salloum and reported that he quit his job. R. at 208. He also reported that he was taking and tolerating his medication well, but that he continued to drink. R. at 208. Dr. Salloum proceeded to complete a form for the state welfare department indicating that plaintiff was permanently disabled by bipolar disorder based on his clinical history and a review of medical records. R. at 174.

---

[5] A GAF score between 51 and 60 is summarized as "Moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R)* 34 (4th ed. 2000).

On July 27, 2004, plaintiff followed up with Mr. Murray, reporting stressors at home and being overworked at his landscaping job.[6] R. at 282–83. Mr. Murray assessed fatigue secondary to stress, and asked plaintiff to follow up with his therapist. That same day, Mr. Murray wrote a "To Whom It May Concern" note stating that plaintiff could only work part-time up to a twenty-four-hour-per-week job. R. at 247. The note had no temporal limitations as to if or when plaintiff could resume a 40-hour work week. Plaintiff returned to Dr. Salloum on August 10, 2004 and reported being depressed the previous week. Plaintiff said that he had had a good past few days, met new people, and was feeling better. R. at 206. Plaintiff admitted to continued alcohol and cocaine use. R. at 206. Dr. Salloum noted that plaintiff's depression was less prominent. R. at 206.

## C.    Summary of Plaintiff's Testimony

Plaintiff testifies that he started working in 1993 as a landscaper for the City of Pittsburgh. R. at 313. He worked several other jobs including cleaner, bartender, deli counter at a Giant Eagle, and disc jockey. R. at 312–316. While working, he was required to lift objects such as lawnmowers and steel drums used for garbage receptacles, which plaintiff estimated could weight up to 70 pounds.

Plaintiff testified that he stopped smoking in March of 2004, that he still drinks "moderately,"  and had not used cocaine in the last two or three months. R. at 319–320. Plaintiff claimed that he did not know of any specific injury to his back, but that it "goes

---

[6] There is some confusion in the record because plaintiff apparently told Dr. Salloum on July 13, 2004 that he quit his job as a landscaper, but just two weeks later plaintiff told Mr. Murray that his job was a continuing source of stress. It is unclear when or if the plaintiff quit his job due to alleged disability.

out" at times. R. at 318. Plaintiff testified that he was bipolar, though he did not understand what that word meant, but said he could not remember, comprehend, or read. R. at 320. When plaintiff worked he said his job was irritating and stressful and that he would "argue and scream all day long." R. at 323.

Plaintiff testified that he has trouble falling asleep and sleeps anywhere between four and eight hours a night. R. at 325–26.

**D.     Vocational Expert Testimony**

A vocational expert ("VE") testified at the hearing. The VE testified that an individual of plaintiff's age, education, and work experience, who had a mood disorder and used cocaine and alcohol, which caused moderate limitation in dealing with the public, supervisors, co-workers, changes in routine, concentration, memory for details, and interpersonal problems, could perform work activities. R. at 337–38. The VE testified that a person with the abovementioned limitations could return to work as a cleaner or landscaper.

**E.     The ALJ's Findings**

The ALJ made the following specific findings:

1) The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2) The claimant has not engaged in substantial gainful activity since alleging disability on March 11, 2003.

3) The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b) and 416.920(b).

4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5) I find that the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6) I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. §§ 404.1527 and 416.927).

7) The claimant retains the residual functional capacity to perform a full range of jobs, even with his limitations, and would have <u>no</u> limitations if he were to cease smoking and abusing substances.

8) The claimant remains able [to] perform his past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

9) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

R. at 20.


**F.    Issues**

In his brief supporting his motion for summary judgment, plaintiff raises the following challenges to the ALJ's determination: 1) that the ALJ erred by ruling, in form, that plaintiff's mental impairments were "severe," but "not severe" in substance; 2) that the ALJ erred in his analysis of plaintiff's reliance on drugs and alcohol by, in effect, determining that plaintiff's reliance was material, but not citing proper evidence to support such a finding; and 3) that the ALJ dismisses, out of hand, evidence from plaintiff's treating psychiatrist.

IV.     **Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[7] and 1383(c)(3).[8]  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence

---

[7] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[8] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988). The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and

probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). He or she must also give serious consideration to the claimant's subjective complaints of pain, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir. 1986). In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise

against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765

F.2d 31, 37 (3d Cir. 1985).

To qualify for DIB under Title II of the Act, a claimant must demonstrate that

there is some "medically determinable basis for an impairment that prevents him or her

from engaging in any substantial gainful activity for a statutory twelve-month period."

*Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982).

Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether

the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-

step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*,

493 U.S. at 525.  The Court of Appeals for the Third Circuit summarized this five step

process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999):

> In *step one*, the Commissioner must determine whether the claimant is currently
> engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is
> found to be engaged in substantial activity, the disability claim will be denied. . . .
> In *step two*, the Commissioner must determine whether the claimant is suffering
> from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show
> that her impairments are "severe," she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the
> claimant's impairment to a list of impairments presumed severe enough to
> preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer
> from a listed impairment or its equivalent, the analysis proceeds to steps four
> and five. *Step four* requires the ALJ to consider whether the claimant retains the

residual functional capacity to perform her past relevant work. 20 C.F.R. §
404.1520(d). The claimant bears the burden of demonstrating an inability to
return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves
to the final *step* [*five*]. At this stage, the burden of production shifts to the
Commissioner, who must demonstrate the claimant is capable of performing
other available work in order to deny a claim of disability. 20 C.F.R. §
404.1520(f). The ALJ must show there are other jobs existing in significant
numbers in the national economy which the claimant can perform, consistent
with her medical impairments, age, education, past work experience, and
residual functional capacity. The ALJ *must analyze the cumulative effect of all
the claimant's impairments* in determining whether she is capable of performing
work and is not disabled. The ALJ will often seek the assistance of a vocational
expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient

severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because

he or she meets the criteria for one or more of a number of serious Listed Impairments

delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment

is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460

(1983); *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she

will be deemed disabled where he or she is nevertheless unable to engage in "any

other kind of substantial gainful work which exists in the national economy . . . ."

*Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability

under this second method, plaintiff must first demonstrate the existence of a medically

determinable disability that precludes him or her from returning to his or her former job

(Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas,* 823 F.2d at 777.  Once it is shown

that he or she is unable to resume his or her previous employment, the burden shifts to

the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations,

age, education and work experience, he or she is able to perform substantial gainful

activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*,

842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.

1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach

the level of severity necessary to qualify as a Listed Impairment, the ALJ/

Commissioner nevertheless must consider all of the claimant's impairments in

combination to determine whether, collectively, they meet or equal the severity of a

Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined

effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d

52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary

shall consider the combined effect of all of the individual's impairments without regard

to whether any such impairment, if considered separately, would be of such severity,'"),

*citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. §§ 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple

impairments, provides:

> In determining whether your physical or mental impairment or impairments are of
> a sufficient medical severity that such impairment or impairments could be the
> basis of eligibility under the law, we will consider the combined effect of all of
> your impairments without regard to whether any such impairment, if considered
> separately, would be of sufficient severity.  If we do find a medically severe
> combination of impairments, the combined impact of the impairments will be

considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Finally, pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give

17

great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of*

18

the pain itself." *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994

F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by

medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain

*without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.

1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,*

997 F.Supp. 648, 658 (W.D. Pa. 1998).  "Once a claimant has submitted sufficient

evidence to support his or her claim of disability, the Appeals Council may not base its

decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must

present *evidence to refute the claim*.  *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.

1981) (where claimant's testimony is reasonably supported by medical evidence, the

finder of fact may not discount the testimony without contrary medical evidence)."

*Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert.*

*denied* 507 U.S. 924 (1993).


### V.    Discussion

Plaintiff's first argument is that while the form of ALJ Rosenberg's decision found

that plaintiff had a severe mental impairment, the substance of the ruling was that he

had no severe impairments. Plaintiff takes exception to the ALJ's description to the VE

of a hypothetical individual when the ALJ said, "[A]lthough he may complain about

things, he is able to make the adjustments to work *at all levels."* (Emphasis added) R. at

337. Plaintiff contends that a finding of severe impairment on one hand and a

description to the VE of an individual who can make adjustments at all work levels is a clear contradiction — one that necessitates remand.

The ALJ clearly relies on the analysis of the VE who gave testimony to the effect that a hypothetical individual who could adjust to work at all levels could return to his previous work. ALJ Rosenberg writes in his decision that he asked the VE to testify as to the ability of an individual with plaintiff's vocational profile to perform his past work. The VE was "... asked to assume that as a result of his mental impairment he has slight to moderate impairment dealing with the public, supervisors, and coworkers, dealing with pressures and changes in a work setting, with concentration and memory, and with interpersonal problems, but can make the necessary adjustment to work at all levels." R. at 19. The question posed to the VE did not include consideration of plaintiff's impairment or combination of impairments that significantly limits the his physical or mental ability to do basic work activities — a severe impairment as described by 20 C.F.R. § 404.1520(c). S.S.R. 96-3p.

Hypothetical questions must fairly set forth credible limitations established by the physical evidence. *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999) (Court found that hypothetical given to VE was appropriate because it fairly set forth every credible limitation established by the physical evidence.) In the instant case, the hypothetical person described to the VE was not characterized by the severe limitation that the ALJ eventually ruled in finding number three[9] that plaintiff possessed. R. at 20. The

---

[9] Finding three says, "The claimant has an impairment or a combination of impairments considered 'severe' based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b) and 416.920(b)." R. at 20.

20

testimony offered by the VE was contingent on the hypothetical question posed to her, which was factually inaccurate. The ruling made by the ALJ necessarily was in error because it relied on testimony given by the VE who was posited a hypothetical scenario that did not fairly set forth every credible limitation established by the physical evidence.

Plaintiff next contends that ALJ Rosenberg erred because he did not engage in a proper analysis when he determined that plaintiff's history of drug and alcohol abuse was a material factor to a finding of non-disability. Plaintiff argues that Public Law 104-121, the "Contract with America," amended the Social Security Act to provide that an individual may not be found eligible for SSI if drug and/or alcohol addiction is a "material factor" to the disability determination. Pub. L. No. 104.121, § 105(a)(1), (b)(1), 110 Stat. 847, 852–3 (1996) (amending 42 U.S.C. § 423(d)(2) (Social Security Benefits) and 42 U.S.C. § 1382c(a)(3) (SSI Benefits). Plaintiff does not argue that notwithstanding his alcohol and drug use he would still be disabled, merely that the ALJ erred by not engaging in the proper analysis for determining that alcohol and drug use was a material factor. Plaintiff misreads ALJ Rosenberg's ruling.

ALJ Rosenberg at no point determines that plaintiff's alcohol and drug abuse are material factors for a finding of non-disability. Finding number seven of the ALJ's ruling states: "The claimant retains the residual functional capacity to perform a full range of jobs, even with his limitations, and would have no limitations if he were to cease smoking and abusing substances." (Emphasis original) R. at 20. The ALJ further  writes that "[p]ursuant to 20 C.F.R. 404.1545(c)[10] the claimant would have no mental

---

[10] The statute provides:

When we assess your mental abilities, we first assess the nature and extent of your

limitations if he were to stop alcohol and crack cocaine abuse." R. at 16. Plaintiff argues that such a determination must also be made pursuant to an analysis under 20 C.F.R. 404.1535. ALJ Rosenberg's ruling, however, is not that but for the alcohol and drug abuse that plaintiff would be non-disabled. ALJ Rosenberg determines that *despite* his alcohol and drug abuse plaintiff is still capable of performing his past relevant work and is non-disabled. R. at 20. The SSA creates no requirement to apply 20 C.F.R. 404.1535 *unless* there is a determination of disability. The statute reads in pertinent part: "*If we find that you are disabled and have medical evidence of your drug addiction or alcoholism*, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (Emphasis added) 20 C.F.R. 404.1535(a). Because plaintiff — even with his alcohol and cocaine abuse — was deemed not disabled, there was no need for the ALJ to analyze if the alcohol and drug abuse was a contributing factor material to the determination.

Plaintiff's final argument is that the ALJ erred by not considering an assessment form completed by plaintiff's treating psychiatrist and submitted to the Department of Public Assistance. In the assessment form, Dr. Salloum described plaintiff as "permanently disabled" and a candidate for SSI on the basis of his bipolar disorder. R. at 174. An ALJ has great latitude in determining which medical evidence to credit, but "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225

---

mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. 404.1545(c)

F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). ALJ Rosenberg writes, "A welfare assessment by Dr. Salloum (Exhibit 5F) is given no weight since State Welfare criteria are not relevant in this Federal proceeding." R. at 18. In *Lewis v. Califano*, 616 F.2d  73, 76 (3d Cir. 1980), the United States Court of Appeals for the Third Circuit gave "substantial weight" to a report submitted by a physician who was hired by the government to determine whether the claimant was disabled and should receive welfare benefits. While *Lewis* parallels the instant case, this Court recognizes that the physician in *Lewis* was hired by the government and used government criteria to make his determination. Dr. Salloum was not hired by the government and may have based his opinion on different standards. However, simply because the government did not hire Dr. Salloum does not mean his medical opinion can be entirely disregarded, especially in light of his ability to provide a detailed, longitudinal picture[11] of plaintiff's medical impairments.[12] His medical opinion stated on the welfare assessment carries at least some weight, though not necessarily conclusive or substantial weight.

---

[11] The record shows that Dr. Salloum treated plaintiff at least twelve times over a span of one and a quarter years. 20 C.F.R. 404.1527(d)(2)(I) provides in pertinent part: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."

[12] 20 C.F. R. 404.1527(d)(2) provides in pertinent part: "Generally, we give more weight to opinions from your treating source, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence ...."

See  *Richardson v. Perales*, 402 U.S. 389, 402 (U.S. 1971)[13]; *Murgia v. Bowen*, 1988 U.S. Dist. LEXIS 1350 (D. Pa. 1988); *Moon v. Celebrezze*, 340 F.2d 926, 930 (7th Cir. 1965).

While the ALJ can decide that Dr. Salloum's opinion as stated on the Welfare application is inconsistent with other medical evidence and ultimately not credible, the evidence cannot be dismissed out of hand.[14]  The State Welfare application completed by Dr. Salloum on behalf of plaintiff was improperly excluded as evidence because it deserves at least some consideration.

## VI.    Conclusion

This Court has reviewed the ALJ's finding of fact and has determined that his findings are not supported by substantial evidence. Accordingly, this Court will grant plaintiff's motion for summary judgment in part, deny Commissioner's motion for

---

[13] The Court concluded that:

> a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.

Richardson v. Perales, 402 U.S. 389, 402 (U.S. 1971).

[14] 20 C.F.R. 404.1527(c)(2) provides: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, *we will weigh all of the evidence* and see whether we can decide whether you are disabled based on the evidence we have."  (Emphasis added).

24

summary judgment, and remand for further proceedings. An appropriate order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record

Karl E. Osterhourt, Esquire
1789 South Braddock Avenue
Suite 570
Pittsburgh, PA 15218

Paul Kovac, Esquire
Assistant U.S. Attorney
Western District of PA
700 Grant Street, Suite 4000
Pittsburgh, PA 15219